IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 4479 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| BOARD OF TRUSTEES OF ILLINOIS COMMUNITY COLLEGE DISTRICT NO. 508 d/b/a CITY COLLEGES OF CHICAGO d/b/a WYCC-TV, and WAYNE WATSON, in his individual and official capacities, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendants Wayne Watson's ("Watson") and the Board of Trustees of Illinois Community College District No. 508's ("City Colleges") (together, "the Defendants") Motion for Leave to File Under Seal deposition testimony given by the Defendants' former general counsel, Yolande Bourgeois ("Bourgeois"). The parties have consented to proceed before this Court under 28 U.S.C. § 636(c) for all purposes, including trial and the entry of final judgment. In its initial Motion, the Defendants sought to file a transcript of Bourgeois' deposition under seal so that they could later submit a motion asserting the attorney-client privilege and the work product doctrine for parts of Bourgeois' testimony. The Court provisionally granted the Motion on July 13, 2010 for this limited purpose. Based on the Defendants' subsequently-filed privilege arguments, the Court now finds that the Defendants' Motion should be granted in part and denied in part.

## I. Background

Plaintiff Maria Moore ("Moore") was hired by City Colleges in 2002 as the general manager of WYCC-TV, a public broadcasting station affiliated with City Colleges. According to Moore, she reported directly to Watson, the Chancellor of City Colleges. Moore alleges that Watson directed her at various times to use WYCC-TV's resources on projects that benefitted his personal friends and political allies, thereby violating state and federal regulations. Moore's concerns increased in October, 2005 when the Illinois Attorney General issued an opinion letter finding that community colleges like City Colleges were subject to the State Officials and Employees Ethics Act, 5 ILCS 430/1-1 *et seq.* ("Ethics Act"), which prohibits state employees from engaging in political activities.

Moore expressed some of her concerns about WYCC-TV's activities to City Colleges' general counsel, Yolande Bourgeois, who was also City Colleges' ethics officer under the Ethics Act. The parties' briefs do not clearly outline the dates or scope of Bourgeois' subsequent activities, but the general counsel took some steps to investigate Moore's allegations. Bourgeois also filed a formal ethics complaint with the Illinois State Office of Executive Inspector General ("OEIG") on September 27, 2006, alleging misconduct by two City Colleges employees who are not directly related to the instant case. *See* Ex. 412. According to Moore, Bourgeois presented her findings on Moore's complaints to City Colleges' Board of Directors in October, 2006. Moore claims that following Bourgeois' report she experienced increased levels of criticism of her work and was eventually terminated on November 1, 2007. On July 24, 2009, Moore filed the instant suit, which now includes seven counts against the Defendants for retaliation under Illinois state law, the False Claims Act, 31 U.S.C. § 3729 *et seq.*, the First Amendment,

42 U.S.C. § 1983, the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.*

On June 4, 2010, Moore took the deposition of Yolande Bourgeois, formerly City Colleges' general counsel and now a Circuit Court Judge for Cook County, Illinois. City Colleges filed the instant Motion to place the deposition transcript under seal. The Defendants have submitted a privilege log covering approximately ninety of the transcript's 192 pages, as well as nine exhibits used at Judge Bourgeois' deposition. Relying on the attorney-client privilege and the attorney work product doctrine, the Defendants argue that the exhibits and the transcript sections included in their privilege log should remain under seal.

## II. Legal Standard

The attorney-client privilege promotes open discussions between attorneys and their clients by preventing the disclosure of certain kinds of attorney-client communications. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The Seventh Circuit has adopted eight principles that define the existence and scope of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (internal quote and citation omitted). Only communications that are made for the purpose of obtaining legal advice are protected by the attorney-client privilege. *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990). When, as here, the parties involve an organization with in-house counsel,

communications between the general counsel and an organizational employee are protected only when the employee is seeking legal advice on behalf of the entity itself. *See Upjohn*, 449 U.S. at 394; *Banks v. Office of Senate Sergeant-at-Arms*, 241 F.R.D. 376, 382 (D.D.C. 2007); *see also United States v. Segal*, No. 02-CR-112, 2004 WL 830428, at *2 (N.D. Ill. April 16, 2004) ("[A] corporation cannot assert a claim of privilege when one of its officers sought personal legal advice, even if that officer sought it from the corporation's general counsel.").

The work product doctrine protects documents that an attorney prepares in anticipation of litigation in order to prepare or analyze a client's case. Fed. R. Civ. P. 26(b)(3); *Sandra T.E. v. South Berwyn Sch Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). A lawsuit need not be underway for the work product doctrine to apply "provided the prospect of litigation [is] not remote." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006). This protection only prevents the disclosure of protected documents or communications, however, not the underlying facts. *See Upjohn*, 449 U.S. at 395-96.

In light of the discussion that follows, the Court stresses that the Seventh Circuit and this Court have been very clear that the party asserting a privilege has the burden of showing all of its elements. *See, e.g., United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993) ("[M]ere conclusory statements will not suffice to meet that burden.")

### III. Discussion

In order to address the parties' arguments, the Court must first determine the scope of the attorney-client privilege as it applies to Judge Bourgeois, who served in the dual roles of general

counsel and ethics officer for City Colleges. It is well established that when an attorney provides both legal and non-legal services to a client, the legal aspect must predominate in the communication under review in order for it to be protected by the attorney-client privilege. *Allendale Mut. Ins. Co.*, 152 F.R.D. at 137 ("[T]he privilege will not apply where the legal advice is incidental to business advice."). Unfortunately, Judge Bourgeois' dual role as in-house counsel and ethics officer does not easily lend itself to this traditional analysis because it is not clear from the parties' briefs whether her ethics role was legal or non-legal in nature. The Defendants argue that the attorney-client privilege applies to advice Judge Bourgeois gave in her role as City Colleges' ethics officer, but they provide little analysis of this contention. Moore denies this claim, arguing that Judge Bourgeois' ethics role was separate from her function as general counsel because she only served as a liaison between City Colleges and the OEIG, which is charged with investigating allegations of fraud.

This matter appears to present an issue of first impression. To resolve it the Court turns to the statute itself, which provides for more than Moore states. Section 430/20-23 of the Ethics Act imposes three duties on a person who has been named the ethics officer of a state agency like City Colleges. As Moore notes, the officer functions first as a liaison between the state agency and the Executive Ethics Commission. Secondly, the officer also reviews statements of economic interests the officer's state agency files with the Illinois Secretary of State. 5 ILCS 430/20-23 (1) & (2). Although the statute does not require an ethics officer to be an attorney, it does contemplate a third, quasi-legal function for the officer who must:

> provide guidance to officers and employees in the interpretation and implementation of this Act, which the officer or employee may in good faith rely upon. Such guidance shall be based, wherever

possible, upon legal precedent in court decisions, opinions of the Attorney General, and the findings and opinions of the Executive Ethics Commission.

5 ILCS 430/20-23(3). An ethics officer, therefore, is required to give advice on compliance with Illinois law based on the officer's interpretation of legal precedents. The "ethics" at issue here, moreover, is not merely a body of admirable rules or professional standards but a set of duties statutorily imposed by the Illinois legislature.

The Court concludes from the statute's language that a privilege issue would not arise when a non-attorney acts as an ethics officer because a client must seek advice from a "professional legal advisor" before the attorney-client privilege can apply. *South Berwyn Sch. Dist.*, 600 F.3d at 618. When, however, the ethics officer is also the state agency's general counsel, it is difficult to draw a bright line between non-legal advice and traditional legal counsel. An employee of a state agency could approach the agency's attorney reasonably expecting that she was making confidential communications designed to seek legal advice on whether certain actions would be, or were, in compliance with the Ethics Act. This is the kind of communication the attorney-client privilege is designed to protect, and if all eight of the privilege's factors are met, an attorney's advice under the Ethics Act could be privileged.

Judge Bourgeois' deposition testimony confirms this conclusion. She noted, for example, that "the [college's] ethics policy was a law" (Tr. at 140), indicating that she believed that statements she made concerning compliance with the Ethics Act constituted legal advice.[1] Thus,

---

[1] Judge Bourgeois testified that City Colleges' activities were also directed by non-legal guidelines such as its "mission statement." (Tr. at 105.) The deposition transcript indicates that the parties introduced a copy of this statement at the deposition, and the Defendants have not claimed any privilege under it. It is possible, therefore, that Bourgeois' advice could stem from
(continued...)

the Court finds that ethics-related communications between Judge Bourgeois and City Colleges' officers and employees that are based on the Ethics Act can be protected by the attorney-client privilege when all of the Seventh Circuit's required factors are shown to exist. As always, it is for the party asserting the privilege to demonstrate its existence. *BDO Seidman*, 337 F.3d at 811. With this principle in mind, the Court turns to the specific exhibits and portions of the deposition transcript raised by the Defendants.

### A. Attorney Work Product Doctrine

The Defendants claim that nine of the thirteen transcript sections and all of the exhibits listed in their privilege log are protected by the attorney work product doctrine. The Court addresses this issue separate from the attorney-client privilege because, with the exception of transcript pages 117 to 125 and Exhibit 412 discussed below, the Defendants do not contend that any of the items in their privilege log were made in anticipation of litigation. The work product privilege only applies to an attorney's statements or documents that "can fairly be said to have been prepared or obtained because of the prospect of litigation." *South Berwyn Sch. Dist.*, 600 F.3d at 622. With the exception of pages 117 to 125 and Exhibit 412, therefore, the Defendants have not made sufficient allegations to support a finding that the work product doctrine applies to any of the items under consideration. Accordingly, all of the Defendants' work product claims, other than those related to pages 117 to 125 and Exhibit 412, are denied on the ground that the Defendants have failed to allege all the foundational requirements for finding such a privilege.

---

[1](...continued)
non-legal guidelines such as the mission statement, as well as from legal sources such as the Ethics Act. Here, the portions of the transcript under review relate only to the Ethics Act.

As a result, seven of the Defendants' nine exhibits can be deemed as not privileged because the Defendants' privilege log seeks protection for Exhibits 413, 413A, 414, 415, 417, 418, and 420 based solely on the work product doctrine. The log asserts the attorney-client privilege only for Exhibits 408 and 412, discussed below. In the absence of any argument that Exhibits 413, 413A, 414, 415, 417, 418, and 420 were made in anticipation of litigation, the Court finds that they are not privileged, and the Defendants' Motion is denied as it relates to these seven exhibits.

### B. Pages 67 to 82; Exhibit 408

Pages 67 through 82 of the deposition transcript concern conversations Judge Bourgeois had with Moore, Watson, and Deidra Lewis, City Colleges' Executive Vice Chancellor. On August 23, 2006, Moore visited Bourgeois in her office and expressed apprehension over a directive Watson had given her, a concern that Bourgeois also shared.[2] Accordingly, Bourgeois and Moore met with Lewis the next day in Lewis' office and had a phone conference with Watson on August 25 in which Bourgeois gave Watson her opinion on the propriety of his directive to Moore. Exhibit 408 contains three pages of Bourgeois' notes on her conversations with Moore, Lewis, and Watson.

The Defendants argue that Judge Bourgeois' testimony and Exhibit 408 are protected by the attorney-client privilege because Moore was seeking legal advice on August 23, and Bourgeois gave Watson legal guidance in their phone conversation on August 25. "To determine

---

[2] In light of the privileged nature of this portion of the deposition, the Court does not discuss the specific details of Bourgeois' testimony or Exhibit 408.

whether communications were made primarily for the purpose of providing legal services, the court must consider the context in which they were made." *United States v. Cohn*, 303 F. Supp.2d 672, 684 (D. Md. 2003). The crucial issue is whether the legal advice Moore allegedly sought was on behalf of City Colleges or for herself alone. *See Banks*, 241 F.R.D. at 382 ("[T]he privilege protects communications made by employees of the client when the client's attorney is interviewing those employees for the purpose of rendering legal services to the client.").

Throughout their Motion, however, the Defendants fail to distinguish between legal advice Moore may have sought on behalf of Bourgeois' client – City Colleges – and herself. In this instance, the context of Bourgeois' discussions indicates that Moore sought legal advice on behalf of City Colleges and not merely for herself. The record suggests that Bourgeois understood their conversation to be related to her client because she quickly included higher-level administrators at City Colleges and raised serious concerns about Watson's acts. Although she did not testify that her advice to Watson was based on the Ethics Act, Bourgeois made clear in other portions of her testimony that the issues Moore discussed with her posed potential legal violations because "the ethics policy was a law." (Tr. at 140.) Thus, the fact that Bourgeois did not specifically cite the Ethics Act in this portion of her deposition testimony is not in itself dispositive. In addition, the Court notes that Bourgeois gave no indication that her advice to Watson was based on any non-legal ground such as City Colleges' mission statement.

In this instance, therefore, the Court concludes that Moore's conversation with Bourgeois, and Bourgeois' communication with Watson, involve Bourgeois' advice on legal issues related to City Colleges and are protected by the attorney-client privilege. As notes documenting these

privileged conversations, Exhibit 408 is also protected by the attorney-client privilege. For these reasons, the Defendants' Motion is granted as it relates to pages 67 to 82 and Exhibit 408.

### C. Pages 95 to 99

Judge Bourgeois stated that her own job was not secure at City Colleges and that she was on "thin ice" with Watson. (*Id.* at 95.) She also described conversations she had with City Colleges' Board member Terry Newman. The Defendants argue that her testimony is protected by the attorney-client privilege because Bourgeois offered Newman legal advice in their conversations. The record, however, does not indicate what advice, if any, Bourgeois gave Newman, and her deposition testimony only states that she began telling him about unethical acts at City Colleges when Newman interrupted her and suggested that she leave her employment. (*Id.* at 97.) Bourgeois did not reveal the substance of any legal advice she may have given to Newman. Thus, the Defendants have failed to carry their burden of proof of showing that this section of the transcript is privileged, and the Motion is denied on this issue.

### D. Pages 103 to 117

In this section, Judge Bourgeois testified to conversations she had with Moore on issues similar to those the Court has already found to be protected by the attorney-client privilege. *See* Sec. III(B), *supra*. According to Bourgeois, Moore approached her to complain of what Moore believed to be improper requests to use WYCC-TV's funds on projects related to Rev. Jesse Jackson and a newspaper published by one of Watson's friends, both of which were outside City Colleges' mission. In addition, the two women also shared concerns about their job security,

with Bourgeois stating that she was "in the freezer" with Watson. (Tr. at 116.) The Defendants claim in summary form that the attorney-client privilege applies because Moore was seeking legal advice from Bourgeois.

In contrast to the context of the discussions noted in Sec. III(B), the testimony in pages 103 to 117 reveals a different setting involving a private conversation instead of a legal consultation. Bourgeois stated that she and Moore were personal friends as well as co-employees, and a memo by Moore that was introduced in this section of the deposition noted that Moore was "always clear about friend hat versus general counsel hat" when she talked with Bourgeois. (*Id.* at 112.) Moreover, Moore had been warned by Watson not to speak with Bourgeois in her capacity as general counsel, and she was presumably no longer authorized to seek legal advice for City Colleges from the general counsel. Bourgeois was aware of Watson's directive and stated that Moore could have been terminated if she violated it. (*Id.* at 111.)

In light of these facts, the Defendants have failed to show that Moore was seeking advice on behalf of City Colleges instead of expressing private frustrations and job concerns. The fact that Moore discussed some of the same subjects she raised in the August 23, 2006 meeting described earlier does not mean that the attorney-client privilege necessarily attaches to these discussions. It is well established that "[t]he privilege is limited to situations in which the attorney is acting as a legal advisor." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 415 (N.D. Ill. 2006). Consequently, the Defendants must show that Moore consulted Bourgeois *as* general counsel, not as a friend, and that she sought guidance on City College's compliance with the Ethics Act. The Defendants' conclusory argument fails to account for the specific context of Bourgeois' testimony, and the Court finds that the Defendants have not carried their burden of

showing all the elements required for the attorney-client privilege in this section of the deposition. The Defendants' Motion is denied on this point.

### E. Pages 117 to 125; Exhibit 412

Exhibit 412 is a letter Judge Bourgeois wrote on September 26, 2006 to the investigation department of the OEIG. The letter recounts, in part, some of the background events that eventually led to a lawsuit filed against City Colleges by Ramona Shaw, and in doing so it also describes events that stemmed from alleged retaliation against another City College employee who complained of discrimination. *See Shaw v. Board of Trustees et al.*, No. 07 C 6257 (N.D. Ill. filed Nov. 5, 2007). In her deposition testimony, Bourgeois further described some of the events outlined in the OEIG letter.

The Defendants argue that Exhibit 412 is protected by the work product doctrine because the facts it describes were part of Shaw's subsequent lawsuit against City Colleges. This argument fails to demonstrate how the letter – which only briefly mentions that Shaw told her supervisor about the employee's discrimination claim – was made in light of impending litigation by Shaw. Shaw was not the subject of Bourgeois' letter, and the Defendants do not argue that a lawsuit by Shaw was likely on September 26, 2006. In fact, Shaw's suit against City Colleges was filed over thirteen months after Exhibit 412 was sent to the OEIG, and the Defendants have failed to demonstrate that Bourgeois wrote the letter in light of impending legal action against City Colleges.

The Defendants also contend that Exhibit 412 and Bourgeois' deposition testimony are protected by the attorney-client privilege. The Defendants argue that the deposition reveals

conversations between Bourgeois and City Colleges personnel, but they fail to allege that these conversations were confidential or that any legal advice was sought or given. The transcript plainly shows that Bourgeois did not reveal any guidance she may have given an employee of City Colleges, and the attorney-client privilege does not apply to this portion of the deposition.

The Defendants also fail to demonstrate how Bourgeois' letter to the OEIG, which was not her client, involves a confidential attorney-client communication. Exhibit 412 was written to a third-party, not to City Colleges or one of its employees. Moreover, the Defendants also produced the exhibit to Moore herself as part of this case. The voluntary production of a document can waive the attorney-client and work product privileges, although inadvertent production does not. *See Harmony Gold USA., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 476-79 (N.D. Ill. 2002). In order to protect themselves against waiver, the Defendants must demonstrate that their disclosure of Exhibit 412 was inadvertent. *See Harmony Gold*, 169 F.R.D. at 116. They have not addressed this issue, however, and the Court finds that even if Exhibit 412 were protected by the attorney-client privilege, the Defendants waived it by producing Bourgeois' letter to Moore. The Motion is denied as it relates to Exhibit 412 and pages 117 to 125.

### F.     Pages 127 to 128

Judge Bourgeois testified briefly in this section that she told Board members Terry Newman and Jim Tyree that Watson's recent treatment of her, noted above, might have a negative impact on her plans to become a Circuit Court judge. Contrary to the Defendants' argument, the testimony contained in this brief portion of the deposition does not include legal

advice but only a complaint about Bourgeois' increasingly difficult situation as a City Colleges employee. Thus, the Court finds that the Defendants have failed to show why the attorney-client privilege protects this section of the deposition from disclosure, and the Motion is denied on this issue.

### G. Pages 130 to 147

In this section, Bourgeois testified that she wrote two memoranda for her own personal use, Exhibits 413 and 413A, in preparation for a meeting with Jim Tyree. According to Bourgeois, she met with Tyree, in part, to tell him about ethics violations at City Colleges and to discuss what she perceived to be retaliation against her, including various severance packages that had been proposed to her if she left her employment with City Colleges. The meeting, however, did not go as planned, and Tyree quickly accused Bourgeois of "being in a conspiracy." (Tr. at 134.) Bourgeois was also asked a series of questions in the deposition related to Exhibits 413 and 413A, which contain typed and written notes on various events at City Colleges discussed above that Bourgeois believed constituted ethics violations.

The Defendants contend that Bourgeois' testimony is protected by the attorney-client privilege because the questions she was asked were designed to induce Bourgeois to reveal legal advice she gave Tyree. Whatever the purpose of the questions Bourgeois was asked at the deposition, her answers did not reveal what advice, if any, she gave Tyree; she only described the fact of meeting with him and stated that she was prepared to tell him about ethics violations at City Colleges. The Court, therefore, finds that the Defendants have not carried their burden of

demonstrating why this section of the transcript is privileged material, and the Motion is denied on this issue.

H. **Pages 147 to 153**

Judge Bourgeois testified that she made handwritten notes concerning a phone call she received from Jim Tyree after their meeting. Tyree said that he had told Watson about Bourgeois' ethical concerns and that Watson thought they should be investigated. Bourgeois' notes were introduced at the deposition as Exhibit 414. In her testimony, Bourgeois described what the notes were and stated that she made them because she feared that she was about to be retaliated against for raising ethics concerns. (*Id.* at 151.)

The Defendants do not contend that Exhibit 414 is protected by the attorney-client privilege, but they do argue that Bourgeois' comments about it are privileged because they reflect legal conversations she had with Tyree. The Court's review of Exhibit 414 shows that neither it nor the questions Bourgeois was asked reveals any confidential communication made to Tyree on behalf of City Colleges. As with the preceding section, moreover, the Defendants fail to state why Bourgeois' statements regarding Exhibit 414 are privileged when the document itself is not. Thus, the Defendants have not shown any of the elements required for the attorney-client privilege. The Motion is denied on this issue.

I. **Pages 153 to 164**

Judge Bourgeois testified that Moore sent her an email on December 27, 2006 that was introduced as Exhibit 415. Moore listed several categories of alleged unlawful and unethical

occurrences at City Colleges, including claims of retaliation, forgery, and the use of funds for personal gain. The email itself is not privileged for the reasons stated earlier.[3] According to Bourgeois, Moore feared that she was being retaliated against for questioning some of Watson's directives. Bourgeois also stated that she shared some of Moore's concerns about possible ethics violations but that she had already completed her ethics investigation and filed her report with the OEIG.

According to the Defendants, Bourgeois' testimony is subject to the attorney-client privilege because the questions she was asked about Exhibit 415 involved testimony that revealed confidential legal advice. (Reply at 9.) This summary argument does not identify the questions at issue or identify the City Colleges employees who were seeking or receiving legal advice. As the party asserting a privilege, the Defendants cannot rely on conclusory assertions. *Allendale Mut. Ins. Co.*, 152 F.R.D. at 139. In the absence of any relevant argument, therefore, the Court concludes that the Defendants have not shown how this deposition portion is protected by the attorney-client privilege, and their Motion is denied on this section of the transcript.

### J.     Pages 164 to 168

Judge Bourgeois testified in this section that Moore told her that she had received a direct order from Watson never to speak to a City Colleges' Board member outside his presence and

---

[3] In their initial memorandum, the Defendants listed all the privileges they were asserting for the exhibits at issue here. (Def's. Memo. at 2.) Their privilege log only asserts the work product doctrine for Exhibit 415. The Defendants' Reply argues for the first time that Exhibit 415 is also protected under the attorney-client privilege. (Reply at 9.) Courts do not consider arguments that are first asserted in a reply brief, however, because such arguments are deemed to be waived. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004).

that she could face termination if she did so. The Defendants claim that this testimony is privileged because Moore was seeking legal advice from Bourgeois. Bourgeois, however, clearly testified that she did not discuss the legality of Watson's statement with Moore (Tr. at 167-68), and nothing in the record suggests that Moore spoke with Bourgeois in confidence or as part of an effort to obtain legal advice for City Colleges. As a result, the Defendants have not shown why this section of the transcript is protected by the attorney-client privilege. The Motion is denied as it relates to pages 164 to 168.

### K. Pages 174 to 180

Judge Bourgeois was asked to identify and explain Exhibit 417, which contains Bourgeois' written notes concerning invoices related to expenditures on several of the questionable projects discussed earlier. The document contains nine entries, the fifth of which briefly states, "Elsa – Clinton Bristow retaliation." (Ex. 417.) In her deposition, Bourgeois testified that she wrote this down because Elsa Tullos, a City Colleges employee, had expressed concern that she had been asked to work on a memorial for Mr. Bristow, a deceased friend of Watson's. (Tr. at 177-78.) The Defendants claim that Bourgeois' testimony falls within the attorney-client privilege because it refers to a conversation between Bourgeois and Tullos in which Tullos sought legal advice. As before, however, the Defendants' claim is conclusory; they do not state when or where Tullos spoke with Bourgeois, do not provide the context for their conversation, and fail to argue that Tullos – whom Bourgeois testified believed she was being retaliated against – spoke with Bourgeois on behalf of City Colleges, not herself. Accordingly,

the Defendants have failed to carry their burden of showing why this section of the deposition is protected by the attorney-client privilege, and this section of their Motion is denied.

### L.     Pages 180 to 182

Judge Bourgeois testified in this brief section that Exhibit 418 was a copy of notes she had made for her own personal use. The exhibit is a three-page, typed memorandum stating that Bourgeois had told members of the OEIG that she would be unable to complete an ethics investigation of City Colleges and expressing her belief that she was being retaliated against. The memorandum also contains six separate, detailed examples of retaliation that Bourgeois believed had been directed at her. As noted earlier, Exhibit 418 is not privileged because the Defendants have failed to show why it was made in anticipation of litigation.[4] Contrary to the Defendants' claim, Bourgeois' testimony merely states what Exhibit 418 is and reflects no legal advice that was sought or given. Thus, the Motion is denied on this point because pages 180 to 182 are not protected by the attorney-client privilege.

### M.     Pages 185 to 188

Judge Bourgeois identified Exhibit 420 as a draft "Complaint" that lists her as the Complainant and Watson as one of two Respondents. The Complaint states that Bourgeois was legally and ethically required to file an ethics complaint with the OEIG on September 27, 2006 and lists multiple acts of perceived retaliation by Watson after the OEIG complaint was filed.

---

[4] As with Exhibit 415, the Defendants contend for the first time in their Reply that the attorney-client privilege applies to Exhibit 418. As such, the argument has been waived. *Carter*, 383 F.3d at 679.

- 18 -

These include perceived cold or rude behavior to her by Watson. Bourgeois briefly explained that Exhibit 420 was written in order to file an internal retaliation claim, not in anticipation of litigation. (*Id.* at 187.) She gave no indication as to whether the Complaint was ever filed or even seen by a third party. The Defendants argue that Bourgeois' testimony is protected by the attorney-client privilege because it concerns conversations she had with employees of City Colleges while she was its general counsel. Bourgeois, however, merely stated in her deposition that Exhibit 420, which is not protected by the work product doctrine, was made by her for internal use and did not refer to any discussion she had with a City Colleges employee. As a result, her testimony is not protected by the attorney-client privilege.

### N. Pages 189 to 190

In this final portion of the deposition, Judge Bourgeois was asked if Moore ever told Bourgeois, as a friend or as general counsel, that she believed Watson's requests to use WYCC-TV's funds for personal matters was illegal. Bourgeois answered that Moore believed the requests constituted fraud. (*Id.* at 189.) The Defendants argue that Bourgeois' response is protected by the attorney-client privilege because it reflects a conversation in which Moore sought legal advice. As before, however, this contention is conclusory and fails to argue that Moore approached Bourgeois in her capacity as general counsel instead of as a friend, that her communication was confidential, or that Moore sought advice on behalf of Bourgeois' client – City Colleges – instead of for herself. Moreover, Bourgeois' testimony does not indicate that Moore sought advice of any kind or was more than an assertion of Moore's beliefs on the

propriety of Watson's requests. As a result, the Defendants have not show why this portion of the transcript is protected by the attorney-client privilege.

## IV. Conclusion

For the reasons discussed, the Court finds that the Defendants have failed to demonstrate that any of the exhibits or transcript excerpts listed in their privilege log are protected by the work product doctrine. The Defendants have carried their burden of showing that Exhibit 408 and pages 67 to 82 of the deposition transcript are protected by the attorney-client privilege but have failed to show how that privilege applies to any other exhibit or transcript excerpt. Accordingly, the Motion for Leave to File Under Seal (Dckt. ## 97, 99) is granted in part and denied in part.

The Clerk is ordered to keep Exhibit 408 and pages 67 to 82 of the deposition transcript of Yolande Bourgeois under seal but to unseal all remaining parts of the transcript and exhibits.

**ENTER ORDER:**

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** November 8, 2010.